IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THOMAS L. FRAZIER, | ) | No. C 09-1009 LHK (PR) |
| | ) | |
| Petitioner, | ) | |
| | ) | ORDER DENYING PETITION FOR WRIT |
| vs. | ) | OF HABEAS CORPUS; DENYING |
| | ) | CERTIFICATE OF APPEALABILITY |
| DERRAL G. ADAMS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

Petitioner, a California prisoner proceeding *pro se*, filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed an answer and a supporting memorandum of points and authorities addressing the merits of the petition. Although given an opportunity, Petitioner has not filed a traverse. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to habeas corpus relief and denies the petition.

## FACTUAL BACKGROUND

Petitioner, the victim, "J.D.," and J.D.'s mother all lived together. (*People v. Frazier*, No. A117257 (Cal. App. 1 Dist. Nov. 26, 2008), Resp. Ex. 3 ("Op.") at 2.) J.D. considered Petitioner her father and had known him since she was one-year old. (*Id.*) When J.D. was nine-years old, Petitioner began to show her pornographic magazines. (*Id.*) While J.D. was still nine-years old, Petitioner began to force her to give him oral sex, and eventually, Petitioner was

sodomizing her most weekdays until J.D. was twelve-years old. (*Id.*)  J.D. finally told a friend and they called Child Protective Services together and reported the abuse. (*Id.* at 2-3.)  Police officer, Christine Wesselius requested that J.D. make three recorded phone calls to Petitioner. (*Id.* at 3.)  During those phone calls, Petitioner admitted that he abused J.D.; apologized for it; reassured her that no DNA testing would reveal any evidence of the abuse because "it's been too long;" stated that he did not realize that she did not like the sexual acts; and promised her that it would never happen again. (*Id.* at 3-4.)  When interviewed by the police, Petitioner at first denied any sexual activity with J.D., but eventually confessed that he touched her, had anal sex with her, and had J.D. perform oral sex on him on 10 or 12 occasions. (*Id.* at 4.)

Petitioner was charged with and convicted of 36 counts of lewd and lascivious acts on a child under the age of 14.  The jury also found true 21 allegations. (Resp. at 1.)  Petitioner was sentenced to a total of 225-years to life. (*Id.*)  The California Court of Appeal affirmed the judgment on November 26, 2008. (Resp. Ex. 3.)  The California Supreme Court denied review on February 11, 2009. (Resp. Ex. 4.)  Petitioner filed the instant petition on March 9, 2009.

## LEGAL CLAIMS

Petitioner asserts the following claims for habeas relief: (1) the trial court violated *Miranda* by admitting the confession he made to police officers; (2) counsel was ineffective for failing to object to the admission of damaging evidence; (3) his sentence is cruel and unusual; and (4) the trial court's imposition of consecutive sentences on Counts 1 - 17 violated his right to a jury trial.

## DISCUSSION

**A.    Standard of Review**

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes significant restrictions on the scope of federal habeas corpus proceedings.  Under the AEDPA, a federal court may not grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was

1   based on an unreasonable determination of the facts in light of the evidence presented in the

2   State court proceeding." 28 U.S.C. § 2254(d)(2).

3        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

4   court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

5   law or if the state court decides a case differently than [the] Court has on a set of materially

6   indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the

7   'unreasonable application clause,' a federal habeas court may grant the writ if the state court

8   identifies the correct governing legal principle from [the] Court's decisions but unreasonably

9   applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court may not

10  issue the writ simply because the court concludes in its independent judgment that the relevant

11  state-court decision applied clearly established federal law erroneously or incorrectly. Rather,

12  that application must also be unreasonable." *Id.* at 411.

13       "[A] federal habeas court making the 'unreasonable application' inquiry should ask

14  whether the state court's application of clearly established federal law was 'objectively

15  unreasonable.'" *Id.* at 409. In examining whether the state court decision was objectively

16  unreasonable, the inquiry may require analysis of the state court's method as well as its result.

17  *Nunes v. Mueller*, 350 F.3d 1045, 1054 (9th Cir. 2003). The "objectively unreasonable" standard

18  does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss

19  of clear error fails to give proper deference to state courts by conflating error (even clear error)

20  with unreasonableness." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

21       A federal habeas court may grant the writ if it concludes that the state court's

22  adjudication of the claim "resulted in a decision that was based on an unreasonable

23  determination of the facts in light of the evidence presented in the State court proceeding." 28

24  U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made

25  by a state court unless the petitioner rebuts the presumption of correctness by clear and

26  convincing evidence. 28 U.S.C. § 2254(e)(1).

27  ///

28  ///

**B.**   **Petitioner's Claims**

  1. Miranda

  Petitioner claims that because the police did not give him *Miranda* warnings before he confessed, his confession should not have been admitted at trial.  (Petition at 6.)

  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that certain warnings must be given before a suspect's statement made during custodial interrogation can be admitted into evidence.  *Miranda* protections are triggered "only where there has been such a restriction on a person's freedom as to render him 'in custody.'"  *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)).  "[I]n custody" means "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (internal quotation marks omitted).  It requires that "a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave," as judged by the totality of the circumstances.  *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

  The California Court of Appeal summarized the testimonies given at the suppression hearing:

    Three officers went to defendant's workplace at about 11:30 in the morning.  FN3.  They were all wearing plain clothes, and drove together in an unmarked car that had no shield between the front and back seats.  Detective Tom Neary introduced himself to defendant, and apparently told him the others were also police officers.  Neary's gun was concealed, and he did not show defendant the handcuffs he carried.  Neary told defendant the officers were investigating a CPS case regarding J.D., and that he wanted to give defendant the opportunity to provide a statement.  Defendant said he would do so, and appeared eager to cooperate.  Neary told defendant he would like to interview him at the police department, and said he could either drive himself there or get a ride from the officers.  Defendant said he would go with the officers.  Defendant opened the front door of the police car and got into it without assistance.  He was patsearched before he got into the car.  It was the police department's custom to patsearch anyone who rides with a police officer in a vehicle, and defendant did not object or appear uncomfortable.  Neary got into the driver's seat, and the other two officers rode in the back seat.  They engaged in small talk during the ride, but did not discuss the investigation.

    FN3. This portion of the recitation is drawn from the testimony of two of the officers, Tom Neary and Christine Wesselius.

    At the police station, defendant got out of the car on his own, and they

went into the station through a side door.  From the inside, the door was not locked and was marked as an exit.  They went into an interview room, which was near the door they had entered.  The room was approximately six by eight feet, with a table in the middle.  The door locked from the outside, but not from the inside, and it had a small window.  The officers left defendant alone in the room for four or five minutes.  Neary then came in and sat on the opposite side of the table from defendant.  According to Neary, no officers were between defendant and the door, which was next to defendant.

Although Neary did not recall specifically telling defendant he was free to go, he told defendant he was not under arrest, and defendant appeared to understand.  Defendant agreed that he had come voluntarily from his work.  In order to get defendant to confess, Neary implied, untruthfully, that he had DNA evidence and other evidence based on a physical examination of J.D. that indicated she had been molested.

Defendant testified at the hearing on the admissibility of his statements.  According to defendant, when he accepted the officers' ride to the station, he expected them to bring him back to work after the interview.  He knew he was going to the station voluntarily and that he was not under arrest.  One of the officers opened the front passenger door for him.  No one patsearched him or told him he was under arrest before he got into the car.  When they got to the station, the officers pointed out the door they would use, but did not touch him.  The door to the station was a big steel door, and needed a key to open it.  He was taken into a small room, with a table and chairs.  He was left alone in the room for five or ten minutes, with the door closed.  Once he was inside the room, he became concerned that he was being locked in and would not be let out, but he never got up to try to open the door.  He saw that the officers did not use a key to get out of the room.  Two officers returned to the room; defendant testified that he would have had to pass one of the officers to leave the room, but the officer was not blocking his way.  He acknowledged that he could have walked out, but he did not do so because he wanted to tell his side of the story.  The door to the room was closed during the entire interview.  At the beginning of the interview, Neary told him he was not under arrest, and he acknowledged that statement and agreed that he had come to the station voluntarily.

The trial court ruled defendant's statement was admissible.  In doing so, it found that Neary did not tell defendant he was free to leave, but that he made clear to defendant that his statement was voluntary.  The court noted that defendant had testified he was not searched before getting into the police car, that he knew he was not under arrest, that the officers told him he could drive his own car to the station, and that he was never told he could not leave.  Neary's demeanor was "bland to say the least," and the interview lasted approximately 30 minutes or less, which the court concluded was not "oppressive."

(Op. at 4-6.)  The Court of Appeal rejected Petitioner's lack of *Miranda* warning claim, applying

both Supreme Court and state case law.  (*Id.* at 6-8.)  It concluded that even though the interview

took place in a police station and the police suspected that Petitioner was guilty, the totality of

the circumstances demonstrated that a reasonable person would have believed he was free to end

1    the interview and leave the station.  (*Id.* at 7.)

2            Neither *Miranda* nor its Supreme Court progeny set down any bright line rule or specific

3    test for determining when someone is in custody and instead, suggested that the totality of the

4    circumstances of each case must be examined to determine whether there was custody.  *See*

5    *Yarborough v. Alvarado*, 541 U.S. 652, 661-62 (2004).  Because the Supreme Court's test for

6    determining custody is a general standard, the range of reasonable judgment by a state court on

7    this issue is broad.  *See id.* at 663-64.  The issue of whether a suspect is "in custody," and

8    therefore entitled to *Miranda* warnings, presents a mixed question of law and fact, requiring

9    independent review by the federal habeas court.  *See Thompson v. Keohane*, 516 U.S. 99, 107-

10   110 & n.9 (1995).  The custody determination for *Miranda* purposes requires two inquiries.

11   First, the state court must determine what the circumstances surrounding the interrogation were.

12   That is a factual inquiry, entitled to a presumption of correctness under 28 U.S.C. § 2254(d).  *See*

13   *id.* at 112-13.  Second, given those circumstances, the court must determine whether a reasonable

14   person would have felt he was not at liberty to terminate the interrogation and leave.  This

15   second inquiry calls for an application of the controlling legal standard to the historical facts and

16   presents a mixed question of law and fact qualifying for independent review by the habeas court.

17   *See id.*  The Ninth Circuit has identified several factors relevant to the "in custody"

18   determination:

19           Pertinent areas of inquiry include [1] the language used by the officer to summon
             the individual, [2] the extent to which he or she is confronted with evidence of
20           guilt, [3] the physical surroundings of the interrogation, [4] the duration of the
             detention and [5] the degree of pressure applied to detain the individual.  Based
21           upon a review of all the pertinent facts, the court must determine whether a
             reasonable innocent person in such circumstances would conclude that after brief
22           questioning he or she would not be free to leave.

23   *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981).

24           Here, applying the factors set forth in *Booth*, the Court concludes that the California

25   Court of Appeal's decision was not an unreasonable application of clearly established law.  *See*

26   28 U.S.C. § 2254(d).  On the one hand, Petitioner testified that the officers showed up at his

27   work place and asked, "would you come down to the station for a statement?" and then offered

28   him the choice of driving himself or riding with them.  (RT 104.)  Neary informed Petitioner that

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.LHK\HC.09\Frazier009hcden.wpd          6

he was not under arrest, and Petitioner understood that he was going to the police station voluntarily.  (RT 32.)  The interview room was not locked from the inside, nothing was blocking Petitioner from the exit door, and Petitioner was not restrained nor handcuffed.  (RT 105, 120, 127.)  Further, the interview only lasted less than 30 minutes.  (RT 140.)  On the other hand, Neary tried to elicit information from Petitioner regarding his involvement in the crime by stating that they had certain evidence implicating him  (RT 56-58.)  Petitioner was suspected of the crime before the interview.  (RT 138.)  Petitioner was never explicitly told that he was free to leave.  Under these circumstances, because there exist factors both for and against a finding of whether Petitioner was "in custody," and because the state court weighed similar factors to determine Petitioner's custodial status, the state court's application of clearly established law was reasonable.  *See Yarborough v. Alvarado*, 541 U.S. 652, 664-65 (2004) (recognizing that the custody test is a general one which entails giving state courts more leeway in reaching case-by-case results); *Stanley v. Schriro*, 598 F.3d 612, 618-19 (9th Cir. 2010) (citing *Yarborough* and denying habeas relief because "the state court delineated and weighed factors comparable to those the Supreme Court has considered"); *see, e.g.*, *Beheler*, 463 U.S. at 1125 (concluding that Beheler was not "in custody" even though police suspected him of the crime and interview took place at police station); *Mathiason*, 429 U.S. at 295 (finding no indication that the questioning occurred where the suspect's freedom to leave was restricted even though the police interviewed the suspect at the police station, indicated that they believed he was involved in the burglary but informed him that he was not under arrest).

Accordingly, the California Court of Appeal's rejection of this claim was not an unreasonable application of clearly established federal law.  *See* 28 U.S.C. § 2254(d).

2.     Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel because counsel failed to object to four instances of inadmissible evidence.  (Petition at 6.)

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to prevail on a Sixth

Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Id.* at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*

The California Court of Appeal summarized the factual circumstances of each admission of evidence:

> Defendant contends his trial counsel was ineffective for failing to object to the admission of certain evidence.  First, in one of the telephone calls between defendant and J.D., defendant said that he faced about 10 years in prison based on J.D.'s allegations "'cuz I already got that record already from-from sellin' drugs and that.  That was back in '98."  Defendant contends his prior conviction was irrelevant and was highly prejudicial because of the seriousness of drug-related crimes.  (*See People v. Cardenas* (1982) 31 Cal. 3d 897, 907 [evidence of addiction to narcotics to establish financial motive for attempted robbery was inflammatory].)

> Second, in another of the telephone calls, J.D. talked with appellant about some notes her mother had found.  J.D. said her mother had given the notes to CPS, and defendant said the notes had been thrown away or torn up.  Although the trial court had excluded testimony about the content of the notes, defendant contends that the references to the notes in the telephone calls were prejudicial because they allowed the jury to "speculate the worst about their contents."  FN6.

> > FN6.  In defendant's statement to the police, which defendant does not challenge on this ground, defendant said that J.D.'s mother had found a note he had written based on words he had heard someone saying outside the window.  The notes were about "[J.D.] and uh sexual things," and he had written, "I'm gonna get gonna get [J.D.] I'm gonna get [J.D.]  She's gotta nice butt, man.  I'm gonna be the first one to get that," and "I'm a get her to suck my dick."

> Third, in their interview, Neary asked defendant if he would be willing to take a polygraph test.  Defendant said he would be willing to do so if he had to.  Neary told him a test would be voluntary, and asked him what he thought the results of the test would be, and defendant said that sometimes the results might be wrong and that people could learn how to beat the tests.  Defendant characterizes the second part of this exchange as "retreat[ing]" from his original willingness to take a test.  Noting that the results of polygraph tests are inadmissible because they are unreliable and because jurors might attach undue significance to the fact or the outcome of the examination (*People v. Basuta* (2001) 94 Cal. App. 4th 370, 390), defendant contends admission of this reference to a possible polygraph test was

improper.

> Fourth, Wesselius testified at trial about statements J.D. had made to her after she was brought to the police department by a CPS worker. The version of events J.D. had told Wesselius was consistent with J.D.'s testimony at trial. Defendant contends this testimony was inadmissible hearsay.

(Op. at 10-11.)

Without addressing whether counsel's failure to object was deficient, the California Court of Appeal denied this ineffective assistance of counsel claim based on lack of prejudice. (*Id.* at 11-12.)

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *See Strickland*, 466 U.S. at 697. Where the defendant is challenging his conviction, the appropriate question is "'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Luna v. Cambra*, 306 F.3d 954, 961 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 695).

In light of the factual record as summarized by the California Court of Appeal, the Court concludes that Petitioner cannot demonstrate prejudice from counsel's failure to object to the admission of the challenged evidence. Petitioner confessed during his police interview that he committed sexual acts with J.D., and, while on the telephone with J.D., Petitioner admitted to and apologized for forcing her to engage in sexual acts with him. He does not show a reasonable probability that had counsel objected to the alleged prejudicial evidence, the result of the proceeding would have been different. Thus, the California Court of Appeal's decision rejecting Petitioner's claim of ineffective assistance of counsel was not contrary to, or an unreasonable application of, *Strickland*. *See* 28 U.S.C. § 2254(d).

### 3. Cruel and Unusual Punishment

Petitioner argues that his sentence of 225-years to life violated his right against cruel and unusual punishment. (Petition at 6.)

As an initial matter, Respondent alleges that Petitioner procedurally defaulted this claim, and thus, the Court cannot address it. A federal court will not review questions of federal law

1   decided by a state court if the decision also rests on a state law ground that is independent of the

2   federal question and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722,

3   729-30 (1991).  Petitioner first raised this claim on direct appeal.  The California Court of

4   Appeal stated, "Although defendant did not raise this claim below and so waived it, we will

5   exercise our discretion to consider it on appeal."  (Op. at 14 n.10) (citation omitted).

6       Under the applicable law, a state court decision must "explicitly invoke[] a state

7   procedural bar rule as a separate basis for its decision."  *McKenna v. McDaniel*, 65 F.3d 1483,

8   1488 (9th Cir. 1995).  Federal review will not be precluded "unless the state court makes clear

9   that it is resting its decision denying relief on an independent and adequate state ground."

10  *Siripongs v. Calderon*, 35 F.3d 1308, 1317 (9th Cir. 1994).

11      The state court's opinion contains no express or explicit statement, or any other clear

12  indication, that Petitioner's claim was denied *because* of his failure to raise it in the trial court.

13  Rather, the court simply noted that Petitioner had not raised it below and then exercised its

14  discretion to address the claim.  Thus, federal review of this claim is not precluded by an

15  independent and adequate state rule because the rule was not relied upon clearly or explicitly by

16  the state court as the basis for denying the claim.

17      Moreover, this Court has the discretion to decide the claim on the merits without

18  determining whether the claim is procedurally defaulted.  *See Lambrix v. Singletary*, 520 U.S.

19  518, 525 (1997) (a district court may address the merits without reaching procedural issues

20  where the interests of judicial economy are best served by doing so); *Franklin v. Johnson*, 290

21  F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than

22  the merits issues presented by the appeal, so it may well make sense in some instances to

23  proceed to the merits if the result will be the same.").  Accordingly, the Court addresses the

24  merits below.

25      The Eighth Amendment prohibits the imposition of sentences that are "grossly

26  disproportionate" to the crimes of which a defendant is convicted.  *Ewing v. California*, 538 U.S.

27  11, 30 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).  At the time the state court decided

28  Petitioner's appeal, "only relevant clearly established law amenable to the 'contrary to' or

1    'unreasonable application of' [AEDPA] framework is the gross disproportionality principle, the

2    precise contours of which are unclear and which is applicable only in the "exceedingly rare' and

3    'extreme' case."  *Norris v. Morgan,* No. 08-35645, 2010 WL 3704199, *7 (9th Cir. Sept. 23,

4    2010).  Thus, "courts must objectively measure the severity of a defendant's sentence in light of

5    the crimes he committed."  *Id.*

6           Here, the California Court of Appeal found that Petitioner's sentence was not grossly

7    disproportionate to the repeated and continuous sexual violations of J.D., who considered him to

8    be her father.  (Op. at 15-16.)  Although Petitioner's assaults did not involve murder, the Court

9    of Appeal stated, "A person capable of committing such crimes manifestly poses a grave danger

10   to society."  (*Id.* at 16.)  The Court of Appeal concluded that the sentence was not cruel nor

11   unusual because a lengthy sentence is "need[ed] to deter offenders, like him, who repeatedly

12   commit such crimes and to segregate them from the rest of society."  (*Id.*)

13          In analyzing the issue, the state court properly weighed the severity of the sentence

14   against the nature and number of Petitioner's crimes.  *See Norris*, 2010 WL 3704199 at *9 n.15.

15   Petitioner was sentenced to 15 consecutive terms of 15-years to life for repeated acts of sodomy

16   and forcing his de facto daughter to perform oral sex.  The sodomy occurred almost daily and he

17   made her perform oral sex at least 25 times over the course of several years beginning at age

18   nine.  Even without looking at Petitioner's criminal history, the number and nature of

19   Petitioner's crimes are so severe that his sentence is not grossly disproportionate.  *See Norris*,

20   2010 WL 3704199 at *11-14 (conducting a de novo review and concluding that a sentence of life

21   without the possibility of parole was not grossly disproportionate to a crime of first degree child

22   molestation where the child was five-years old, the touching occurred over the child's clothes for

23   "a couple of seconds," and appellant had a previous conviction of first degree child molestation);

24   *cf. Ewing v. California*, 538 U.S. 11 (2003) (upholding sentence of 25 years to life under three

25   strikes law for stealing three golf clubs); *Lockyer v. Andrade*, 538 U.S. 63 (2003) (upholding

26   sentence of 25 years to life under three strikes law for petty theft convictions); *Nunes v. Ramirez-*

27   *Palmer*, 485 F.3d 432, 439 (9th Cir. 2007) (upholding sentence of 25 years to life for the

28   underlying offense of petty theft with a prior conviction after finding petitioner's criminal

history was longer, more prolific, and more violent than petitioner in *Andrade*, who suffered a harsher sentence); *Taylor v. Lewis*, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (upholding sentence of 25 years to life with possibility of parole for possession of .036 grams of cocaine base where petitioner served multiple prior prison terms and his prior offenses involved violence and crimes against a person).  Thus, the state court's rejection of Petitioner's Eighth Amendment claim was not contrary to or an unreasonable application of clearly established federal law.  *See* 28 U.S.C. § 2254(d).

   4.   Consecutive Sentences

   Petitioner asserts that the trial court violated his right to a jury trial by imposing consecutive sentences for Counts 1 through 17.  (Petition at 6.)  In support of this claim, he cites to *Cunningham v. California*, 549 U.S. 270 (2007).

   The California Court of Appeal denied this claim, recognizing that Supreme Court case law has foreclosed this issue.  (Op. at 14.)

   The Supreme Court has held that facts or findings that are used to increase a sentence beyond its statutory maximum must be submitted to the jury and found beyond a reasonable doubt.  *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000).  The "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings.  *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004).

   In *Cunningham v. California*, the Supreme Court determined that California's determinate sentencing law violated the Sixth Amendment because it authorizes the judge and not the jury to find facts that permit an upper term sentence.  *Cunningham v. California*, 549 U.S. 270, 273 (2007).  *Cunningham* did not address the claim raised here regarding the imposition of consecutive sentences based on a trial judge's findings of fact.  However, the Supreme Court has since determined that the application of *Apprendi* and its progeny is limited to sentencing decisions historically reserved for the jury and does not apply to claims regarding

1    consecutive sentencing.  *See Oregon v. Ice*, 129 S. Ct. 711, 717-18 (2009) (declining to extend

2    *Apprendi* to a state's sentencing system that gives judges discretion to determine facts allowing

3    imposition of consecutive or concurrent sentences for multiple offenses, noting that

4    determination of consecutive versus concurrent sentences is traditionally not within the function

5    of the jury).  In *Ice*, the Supreme Court held that states may assign the question of imposing

6    consecutive instead of concurrent sentences to judges instead of juries without violating the

7    Sixth Amendment.  *Id.* at 714-15.  Therefore, the state court's finding that the trial judge did not

8    violate Petitioner's Sixth Amendment right to a jury trial when he implemented consecutive

9    sentencing for separate offenses is not contrary to, or an unreasonable interpretation of,

10   established Supreme Court precedent.

### CONCLUSION

12        For the reasons set forth above, the Court concludes that Petitioner has failed to show a

13   violation of his federal constitutional rights in the underlying state criminal proceedings.

14   Accordingly, the petition for writ of habeas corpus is DENIED.  The Clerk shall terminate all

15   pending motions and close the file.

16        The federal rules governing habeas cases brought by state prisoners require a district

17   court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its

18   ruling.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective

19   December 1, 2009).  For the reasons set out in the discussion above, Petitioner has not shown

20   "that jurists of reason would find it debatable whether the petition states a valid claim of the

21   denial of a constitutional right [or] that jurists of reason would find it debatable whether the

22   district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

23   Accordingly, a COA is DENIED.

24        IT IS SO ORDERED.

25   DATED: 10/12/2010                    *Lucy H. Koh*
                                          _____
26                                        LUCY H. KOH
                                          United States District Judge